IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00649-CNS-SBP

JONATHAN VALENTINE,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant,

___

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

___

**Susan Prose, United States Magistrate Judge**

     This matter is before the court on Defendant the United States of America's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 33, filed August 7, 2025) (the "Motion" or "Motion to Dismiss"). Plaintiff Jonathan Valentine, proceeding pro se, filed a response in opposition (ECF No. 45, filed September 3, 2025) (the "Response"), and the United States filed a reply (ECF No. 46, filed September 15, 2025) (the "Reply"). By memorandum dated August 7, 2025, United States District Judge Charlotte N. Sweeney referred the Motion to the undersigned United States Magistrate Judge for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 47.

     The court has reviewed the Motion, Mr. Valentine's Response (ECF No. 45), Defendant's Reply (ECF No. 46), the applicable law, and the record in this case. The court concludes that oral argument would not materially assist in resolving the Motion. For the reasons

set forth below, the court respectfully **RECOMMENDS** that the Motion be **GRANTED** and Mr. Valentine's negligence claim asserted in the Amended Prisoner Complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, be **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

## BACKGROUND

The court takes as true the following facts from Mr. Valentine's Amended Prisoner Complaint, ECF No. 7 ("Amended Complaint" or "Am. Compl."), the operative pleading in this matter, for purposes of the Motion to Dismiss:[1]

On or about May 3, 2024, at approximately 20:31 hours, or 8:31 p.m., Mr. Valentine, then a federal inmate housed at the United States Penitentiary in Florence, Colorado ("USP Florence"), was involved in a physical altercation with another inmate, identified as "Spellman," in Cell 127 of Delta A Unit. Am. Compl. at 4, 8; *see also* ECF No. 45 at 1.

Mr. Valentine alleges that he was lying flat on the floor, having complied with orders, when Spellman continued to kick and stomp on his head, neck, back, and other parts of his body, causing severe pain. Am. Compl. at 4; ECF No. 45 at 1. According to Mr. Valentine, Bureau of Prisons ("BOP") Correctional Officer N. Martinez responded by deploying a two-second burst of oleoresin capsicum ("OC") spray into the cell and issuing verbal commands directing Spellman to stop fighting, warning that additional OC spray would be used if Spellman did not comply. Am. Compl. at 4, 8; ECF No. 33 at 1. Mr. Valentine asserts that upon being sprayed he "went

---

[1] For purposes of the Motion only, the United States "accepts as true Mr. Valentine's account of the altercation with inmate Spellman," and relies on Federal Bureau of Prisons Program Statements and the declaration of Complex Captain James Sturgill to establish that Officer Martinez's actions were discretionary in nature and policy-based. ECF No. 33 at 3.

2

down" as instructed and ready to submit to restraints, but Spellman continued the assault. Am. Compl. at 4, 8; ECF No. 45 at 1. Mr. Valentine further alleges that when Officer Martinez warned Spellman that he would use more OC spray, Spellman responded that Officer Martinez "better not spray" or Officer Martinez would "be next," and that despite this ongoing assault and threat, Officer Martinez did not deploy additional OC spray, did not pull or tackle Spellman, and did not use his baton or other tools; instead, he stood at the cell door and watched while the assault continued. Am. Compl. at 4, 8; ECF No. 45 at 1.

Mr. Valentine contends that, as a result of this incident, he now experiences persistent pain in his head, neck, back, and left shoulder; numbness in two fingers of his left hand, which he attributes to nerve damage; difficulty standing for long periods; disturbed sleep with "cold sweats"; and an ongoing need for medication to manage his symptoms. Am. Compl. at 8. Before filing suit, Mr. Valentine submitted an administrative tort claim (number TRT-NCR-2024-07433) to the BOP, alleging that Officer Martinez "did nothing" to stop Spellman from kicking and stomping him and seeking $150,000 in damages. Am. Compl. at 8–9. By letter dated December 16, 2024, BOP Regional Counsel denied the claim, stating that the investigation "did not reveal that you suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment," and advising Mr. Valentine of his right to file suit in federal court within six months. Am. Compl. at 7.

Mr. Valentine commenced this action on February 27, 2025. ECF No. 1. After curing deficiencies and filing the Amended Prisoner Complaint on April 22, 2025, the case proceeded solely against the United States as the proper defendant under the FTCA. *See* Am. Compl. at 1. In the Amended Prisoner Complaint, Mr. Valentine raises one negligence claim under the FTCA,

alleging that the United States is vicariously liable for Officer Martinez's allegedly negligent failure to employ additional force—such as more OC spray, physical tackling, or a baton—to protect Mr. Valentine from the May 3, 2024 assault. *See generally* Am. Compl; ECF No. 45. He seeks $150,000, the amount referenced in his administrative tort claim, in compensatory damages for his physical and emotional injuries and requests that the Court "investigate why Co. N. Martinez just watch[ed] the inmate [do] this to me." Am. Compl. at 6.

The United States moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the discretionary function exception to the FTCA's waiver of sovereign immunity bars Mr. Valentine's claim. Motion at 3–12.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and the burden of establishing federal jurisdiction falls on the party invoking it. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The United States Court of Appeals for the Tenth Circuit has explained:

> First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.
>
> In addressing a factual attack, the court does not presume the truthfulness of the

complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotation omitted).

Here, the United States mounts a factual attack on this court's jurisdiction to entertain Mr. Valentine's FTCA claim. In support of its Rule 12(b)(1) motion, it submits BOP program statements and the declaration of Complex Captain James Sturgill to establish that the challenged conduct is discretionary in nature. ECF No. 33 at 3. Mr. Valentine's handwritten response does not contest the authenticity of those materials or identify any contrary jurisdictional facts; instead, he reiterates his description of the May 3, 2024 assault and quotes portions of BOP's use-of-force Program Statement 5566.06 that, in his view, required Officer Martinez to deploy additional force. *See generally* ECF No. 45. He does not, however, argue that this motion should be resolved under a summary-judgment standard or point to any material dispute of fact bearing on the applicability of the discretionary function exception. *See id*. The court therefore may resolve the Government's factual jurisdictional challenge under Rule 12(b)(1) without converting the motion to one for summary judgment. *See Clark v. United States*, 695 F. App'x 378, 382 n.2 (10th Cir. 2017) (declining to convert where no party "point[ed] to specific disputes of material fact involving merits issues that require resolution under a summary-judgment analysis"); *Lopez v. United States*, 376 F.3d 1055, 1061 (10th Cir. 2004) (conversion unwarranted where the facts asserted to be in dispute were immaterial to the discretionary function analysis). Because there are no disputed jurisdictional facts, an evidentiary hearing is unnecessary.

This court is mindful that Mr. Valentine proceeds pro se and thus affords his filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and

5

does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Mr. Valentine as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'") (citation omitted).

## ANALYSIS

The United States argues that Officer Martinez's decisions regarding the escalation of force during the inmate altercation involved an element of judgment or choice and were grounded in considerations of public policy, thereby falling within the discretionary function exception to the FTCA's waiver of sovereign immunity. *See* ECF No. 33 at 3–10. Mr. Valentine maintains that applicable BOP Program Statements imposed a mandatory obligation to deploy additional force in response to the ongoing assault, thus removing any discretion on Officer Martinez's part. *See* ECF No. 45 at 1–4. For the reasons set forth below, the court finds that Mr. Valentine has not identified any federal statute, regulation, or policy that specifically prescribed a nondiscretionary course of conduct for Officer Martinez under the circumstances presented and therefore concludes that the discretionary function exception applies.

**A. Alleged Negligence in Use of Force: Discretionary Function Exception**

Mr. Valentine asserts that the United States, through BOP staff, acted negligently when Officer Martinez failed to use additional force—such as more OC spray or physical intervention—to stop inmate Spellman's assault on Mr. Valentine in his cell at USP Florence. Am. Compl. at 4; ECF No. 45 at 1. Mr. Valentine does not challenge Officer Martinez's initial

6

deployment of a two-second burst of OC spray; rather, he faults Officer Martinez for not escalating force after inmate Spellman threatened to attack the officer if more OC spray were used, and for instead remaining at the cell door and relying on verbal commands while Spellman continued to kick and stomp Mr. Valentine. *Id*. According to Mr. Valentine, this failure to intervene more forcefully breached a duty of reasonable care owed to him and caused his ongoing physical and emotional injuries. *Id*. The United States moves to dismiss this single negligence claim under Federal Rule of Civil Procedure 12(b)(1), arguing that the conduct Mr. Valentine challenges falls within the FTCA's discretionary function exception and therefore lies outside the court's subject-matter jurisdiction. ECF No. 33 at 3–10; ECF No. 46 at 2–5. Mr. Valentine's handwritten Response reiterates his factual description of the assault and quotes portions of BOP's use-of-force policies that, in his view, required Officer Martinez to deploy additional force. ECF No. 45.

As a general rule, suits against the United States are barred by sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In the FTCA, however, the government has waived sovereign immunity "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But there are exceptions to this waiver.

By statute, the FTCA does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the

> failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This discretionary function exception to the FTCA waiver reflects "Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988) (quotation omitted).

Courts employ a two-step inquiry to determine whether a plaintiff's claim is barred by the discretionary function exception. First, a court must "consider whether the action is a matter of choice for the acting employee." *Id.* at 536. "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Id.* (citation omitted). An act is deemed to be discretionary if no "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 536). The burden "to present evidence of a discretion-constraining regulation or policy resides with the plaintiff[ ]." *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) (citing *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction.") (internal quotations omitted)).

At the second step of the discretionary function analysis, the court must determine whether the conduct is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. The focus is on the type of discretionary decision at issue; "it is unnecessary for government employees to make an actual 'conscious decision' regarding policy factors." *Kiehn v. United States*, 984 F.2d

8

1100, 1105 (10th Cir. 1993) (quoting *Johnson v. United States, Dep't of Interior*, 949 F.2d 332, 339 (10th Cir. 1991) ("The discretionary function exception may apply in the absence of a conscious decision, so long as the Park Service's search and rescue program allowed room for the rangers to make independent policy judgments.")). "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 324-25. Stated another way, if both prongs are satisfied, the discretionary function exception applies and the court lacks jurisdiction over the FTCA claim; if the plaintiff can establish that either element is not met, the exception does not apply. *See Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008).

    **B. Application**

Applying this framework to the undisputed record, the court concludes that Officer Martinez's challenged decisions regarding force escalation during the inmate altercation involved discretionary judgment and were susceptible to policy analysis. Accordingly, Mr. Valentine's FTCA claim is barred by the discretionary function exception and his Amended Complaint must be dismissed for lack of subject-matter jurisdiction.

    **1. Prong One: Whether Officer Martinez's Conduct Was Discretionary**

At the outset, it is important to define with precision the conduct Mr. Valentine challenges. Mr. Valentine does not allege that Officer Martinez failed to respond to the incident at all. To the contrary, he acknowledges that Officer Martinez promptly arrived at his cell and

9

deployed a two-second burst of OC spray. Am. Compl. at 4, 8; ECF No. 45 at 1. Nor does Mr. Valentine contend that this initial use of force was improper. Instead, his claim focuses narrowly on Officer Martinez's subsequent decisions: his choice not to deploy additional OC spray and not to enter the cell or otherwise use physical force—such as pulling, tackling, or using a baton—after inmate Spellman threatened to attack Officer Martinez if more spray were used, while Mr. Valentine lay on the ground ready to submit to restraints. *Id*.

Thus, Mr. Valentine's FTCA theory targets a specific, real-time tactical judgment made by a correctional officer responding to an ongoing inmate-on-inmate assault under volatile and rapidly evolving conditions. It does not challenge broader BOP policy-making, institutional staffing, or inmate classification decisions. The question under the first prong of the discretionary function analysis is therefore whether any federal statute, regulation, or BOP policy "specifically prescribes a course of action" that Officer Martinez was required to follow in those circumstances. *Gaubert*, 499 U.S. at 322. If such a directive existed—such as a rule mandating that an officer "must" deploy additional OC spray or "shall" physically intervene whenever an inmate continues an assault—then Officer Martinez would have had "no rightful option but to adhere to the directive," and his failure to do so would fall outside the discretionary function exception. *Id*. Mr. Valentine, however, identifies no such mandatory directive, and the materials in the record confirm that none exists.

As relevant background, Congress has charged the BOP with the general duty to "provide for the safekeeping, care, and subsistence" of federal inmates and to ensure their "protection, instruction, and discipline." 18 U.S.C. §§ 4042(a)(2), (3). While this statute establishes a general duty of care, courts have uniformly held that it does not mandate a specific method for protecting

10

inmates or dictate how correctional officers must respond to particular threats or assaults. Rather, it leaves the BOP with discretion in determining the appropriate means of fulfilling its statutory responsibilities. *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015) (citing *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception.")); *see also, e.g.*, *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) (§ 4042(a) "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates"); *Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (holding that "[t]he District Court correctly determined that this statute leaves the implementation of these duties to the discretion of BOP officials"); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[D]ecisions with regard to classification of prisoners, assignment to particular institutions or units, and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have the flexibility to operate."). Put simply, "BOP officials *are given no guidance, and thus have discretion*, in deciding how to accomplish these [§ 4042(a)] objectives." *Montez ex rel. Est. of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004) (emphasis added); *Chen v. United States,* No. 09–CV–2306 (ARR), 2011 WL 2039433, at *7 (E.D.N.Y. May 24, 2011) (finding that § 4042 "does not compel an officer to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence" and that "federal regulations governing the protection and discipline of inmates are discretionary in nature"), *aff'd sub nom. Qin Chen v. United States,* 494 F. App'x 108 (2d Cir. 2012).

11

Mr. Valentine relies on BOP's use-of-force regulation, 28 C.F.R. § 552.20, along with related Program Statements 5566.06 (Use of Force and Application of Restraints) and 5576.12 (Oleoresin Capsicum Aerosol Spray). He quotes language stating that staff are "required by LAWS, RULES, and REGULATIONS … to PROTECT others from the hostile actions of inmates," and that "[i]mmediate or unplanned use of force by staff is REQUIRED when an inmate is trying to self-inflict injuries which may be life-threatening or is ASSAULTING any other Person to INCLUDE OTHER INMATES." ECF No. 45 at 4 (emphasis in original). From this language, Mr. Valentine argues that Officer Martinez "could have pulled, tackled, sprayed more OC, or used [a] baton/stick," and that failing to do so was negligent. ECF No. 45 at 1.

But the fact that BOP policy requires staff to respond to assaultive behavior does not mean it mandates a particular *method* of response. Even where Program Statement 5566.06 describes "immediate or unplanned" force as "required" in certain assault situations, the policy does not prescribe the specific tool an employee must use, the amount of force that must be applied, or the mandatory sequence of escalation. Instead, the policy repeatedly frames force decisions in terms of what is "necessary" under the circumstances and directs staff to exercise "common sense and good correctional judgment" in assessing whether immediate or calculated force is appropriate. *See* ECF No. 33-1 at 8, 11 (Sturgill Decl., Attach. 1 at 1, 4) (authorizing force "only as a last alternative" and only "that amount of force necessary," while requiring staff to "use common sense and good correctional judgment in each incident to determine whether the situation allows for the implementation of calculated or immediate use of force procedures"). The same sections make clear that even when immediate force is authorized, staff must still determine—using sound correctional judgment—whether the circumstances call for immediate

12

or calculated force, underscoring that the policy preserves substantial discretion rather than eliminating it. *See id*. at 10–11 (Sturgill Decl., Attach. 1 at 4–5). Accordingly, Mr. Valentine's reliance on the word "required" does not identify the type of "specific and mandatory" directive that would eliminate discretion under *Gaubert*.

Consistent with this reading, § 552.20 itself authorizes staff to use force "only as a last alternative after all other reasonable efforts to resolve a situation have failed" and instructs that "staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious property damage, and to ensure institution security and good order." 28 C.F.R. § 552.20. Program Statement 5566.06 reiterates these principles and expressly emphasizes that staff must use "common sense and good correctional judgment" in determining whether and how to use force. ECF No. 33-1 at 11. As the Supreme Court has made clear, the invocation of "judgment" necessarily implies the existence of discretion. *Gaubert*, 499 U.S. at 322. The Program Statement also distinguishes between "immediate" and "calculated" uses of force and instructs that staff must use sound correctional judgment to determine which approach is appropriate in a given incident—confirming that even in serious situations the policy does not dictate a single operational response. *See* ECF No. 33-1 at 10-12.

Program Statement 5576.12, which governs the use of OC spray specifically, likewise affords staff substantial flexibility. It provides that "[p]rior to any OC aerosol spray being used, employees must attempt verbal intervention to defuse the situation *when feasible*." *Id.* at 33 (emphasis added). The "when feasible" qualifier confirms that officers retain discretion to adapt their response to the circumstances confronting them. At the same time, nothing in the policy

13

mandates that officers escalate to additional OC spray once an initial burst has been used, nor does it require officers to abandon verbal commands in favor of physical intervention whenever an inmate continues to resist or fight.

The testimony of Complex Captain Sturgill reinforces this conclusion. Captain Sturgill attests that there are "no Bureau statutes, regulations, or policies (such as program statements, guidebooks, or handbooks) that remove discretion over how to defuse or attempt to prevent inmate-on-inmate altercations." ECF No. 33-1 at 2 ¶ 4. He further explains that Program Statements 5566.06 and 5576.12 are intended to "establish standard procedures and methods" and to promote consistency and professionalism, but that they nonetheless "afford staff discretion in responding to situations such as the one described in Mr. Valentine's Amended Complaint, including what actions to take, or not take, in a given situation." *Id*. at 2–3 ¶¶ 5, 8. Mr. Valentine offers no contrary policy language and identifies no directive that required Officer Martinez, under these circumstances, to deploy additional OC spray, enter the cell, or use a baton once Spellman issued a threat. Am. Compl. at 4; ECF No. 45 at 1.

In short, Mr. Valentine has not carried his burden of identifying any "specific and mandatory" federal statute, regulation, or policy that dictated a single course of conduct for Officer Martinez during the May 3, 2024 altercation. *Elder v. United States*, 312 F.3d 1172, 1177 (10th Cir. 2002) (citation omitted). On this record, Officer Martinez's decisions regarding whether to escalate force, to engage in hands-on intervention, or to continue issuing verbal commands were the product of judgment or choice. The first prong of the discretionary function inquiry is therefore satisfied. *See Banks v. United States*, No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 4100454, at *13 (S.D.N.Y. Sept. 15, 2011), *report and recommendation adopted*, 2011 WL

5454550 (S.D.N.Y. Nov. 9, 2011) (a correctional officer's conduct in breaking up an inmate fight is "the product of a judgment or choice") (quotation omitted). The court finds that the first prong of the discretionary function exception is satisfied in this case.

### 2. Second Prong: Whether the Challenged Conduct Is Susceptible to Policy Analysis

The court further concludes that the second prong of the discretionary function analysis is satisfied because the type of decision Officer Martinez faced—how to manage and attempt to defuse an active fight between inmates in a confined space after an explicit threat to staff—is quintessentially susceptible to policy analysis. *See Gaubert*, 499 U.S. at 325. Where no statute, regulation, or policy prescribes a fixed course of conduct, courts presume that a government employee's discretionary acts are grounded in policy. *See id.* at 324–25; *see also Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020). The burden thus shifts back to the plaintiff to allege facts demonstrating that the challenged decision is not of the type the discretionary function exception was meant to protect. *Id.* Mr. Valentine has not met that burden here.

Courts recognize that when a correctional officer confronts an ongoing inmate-on-inmate assault, he must make rapid, on-the-spot judgments about how best to resolve the situation, weighing inmate and officer safety, available staff, and the risk that additional force could escalate the disturbance. *See, e.g.*, *Warren v. United States*, 244 F. Supp. 3d 1173, 1240–42 (D.N.M. 2017) (discretionary function exception applied to BOP's alleged failure to timely discover deadly attack in holding cell and to properly restrain assailant, as such decisions involved policy judgments on security and supervision); *Winters v. United States,* No. 10 CIV. 7571 JMF, 2013 WL 1627950, at *6 (S.D.N.Y. Apr. 16, 2013) (explaining that, when faced with prisoner fights, guards must "make an on-the-spot assessment of how best to resolve" the

15

situation, a decision that necessarily involves considerations of safety and available resources); *Banks*, 2011 WL 4100454, at *14 (officer confronted with inmate fight "observed a safety risk and made an on-the-spot assessment of how best to resolve it," and that decision was shielded by the discretionary function exception); *Taveras v. Hasty*, No. CIV.A.CV-02-1307(DGT, 2005 WL 1594330, at *4 (E.D.N.Y. July 7, 2005) (officer's choice to await backup rather than immediately unlock cell during fight protected because no statutory or regulatory provision "mandates breaking up inmate fights immediately, possibly at the expense of safety of the prison personnel"); *Young v. United States*, No. 12-CV-2342 ARR SG, 2014 WL 1153911, at *14 (E.D.N.Y. Mar. 20, 2014) (no policy dictating how BOP officers must respond to inmate-on-inmate violence, rendering their response discretionary and policy-based); *Muick v. Reno*, 83 F. App'x 851, 853 (8th Cir. 2003) (FTCA claim arising from inmate attack barred by discretionary function exception based on BOP's "staffing, classification and placement of inmates"); *Hatten v. Bledsoe*, 782 F. App'x 91, 96 (3d Cir. 2019) ("[T]he relevant statute and regulations here afford the BOP discretion in deciding how to best protect and restrain inmates, and the judgment involved is the type of judgment that the exception was designed to shield. Thus, Hatten's FTCA claims are barred by the discretionary-function exception."); *see also Lemus-Morales v. United States*, No. 1:22-cv-02501-SBP, 2025 WL 2394393, at *7–8 (D. Colo. Mar. 31, 2025) (holding that decisions concerning inmate placement and restraints involve discretion and are susceptible to policy analysis).

Consistent with those decisions, the record here demonstrates that such judgments inherently implicate competing safety and security concerns. Relevant considerations include: the risk of serious injury to the inmates involved if the fight continues; the risk to staff safety if

16

the officer enters the cell or escalates force; the potential for the altercation to spread or intensify if additional force is used; the physical layout of the unit; and the number and proximity of other staff available to assist. *See Kiehn*, 984 F.2d at 1105 (discretionary function exception applies where decisions are of the kind susceptible to policy analysis even absent an explicit "conscious decision" by a government employee). Captain Sturgill confirms that, at FCC Florence, force-escalation decisions during inmate-on-inmate assaults are influenced by "the number of responding staff, available resources, and safety and security considerations of staff, visitors, and inmates." Sturgill Decl. ¶ 10 (ECF No. 33-1 at 3). These are classic policy considerations—balancing safety, resources, and institutional order—and they confirm that the challenged decision is of the type presumptively protected by § 2680(a).

Mr. Valentine's own allegations illustrate that Officer Martinez was required to weigh at least three competing concerns in real time: (1) the need to stop Spellman's ongoing assault on him; (2) Spellman's explicit threat that he would attack Officer Martinez if more OC spray were used; and (3) the possibility that additional force—whether additional OC spray or physical intervention—could harm him or trigger a broader disturbance. Am. Compl. at 4; ECF No. 45 at 1. Officer Martinez's choice to continue issuing verbal commands rather than immediately escalate to additional OC spray or a physical takedown is precisely the sort of security- and resource-allocation judgment courts have held to be shielded by the discretionary function exception. *See Ball*, 967 F.3d at 1079–80 (presuming challenged law-enforcement decisions were policy-based where no mandatory directive removed discretion).

Mr. Valentine argues that because he believes Officer Martinez should have exercised his discretion differently—that "discretionary functions are out the Door" once an inmate is on the

17

ground being assaulted and ready to submit to restraints—the exception cannot apply. ECF No. 45 at 1. But § 2680(a) expressly preserves immunity "whether or not the discretion involved be abused," and the Tenth Circuit has emphasized that the exception applies regardless of whether the officer's judgment was arguably negligent or erroneous. *See Elder*, 312 F.3d at 1176. Allegations that an officer should have balanced competing policy considerations differently, or that he used poor judgment in a dangerous situation, do not remove the conduct from the protection of the exception. *See Gaubert*, 499 U.S. at 323–25.

Because Officer Martinez's challenged conduct involved discretionary judgment, and because that judgment is intertwined with policy considerations concerning inmate and staff safety, institutional order, and allocation of limited correctional resources, the court concludes that the second prong of the discretionary function analysis is also satisfied. The FTCA's waiver of sovereign immunity does not extend to Mr. Valentine's negligence claim arising from Officer Martinez's response to the May 3, 2024 assault, and the court therefore lacks subject-matter jurisdiction. The amended complaint must be dismissed without prejudice. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims.").

## CONCLUSION

For the reasons set forth above, the court respectfully **RECOMMENDS**[2] that:

1. Defendant United States of America's Motion to Dismiss (ECF No. 33) be **GRANTED**;

2. Mr. Valentine's Amended Prisoner Complaint (ECF No. 7) be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction; and

3. Because the court recommends dismissal of the Amended Prisoner Complaint for lack of subject-matter jurisdiction, the court further recommends that Mr. Valentine's pending Motion for Summary Judgment (ECF No. 26) and Motion in Support of Summary Judgment (ECF No. 47) be **DENIED AS MOOT.**

DATED: February 3, 2026               BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[2] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").